ORAL ARGUMENT NOT YET SCHEDULED
_____

No. 12-5171

**IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT**
_____

PATRICIA A. BROOKS,
Plaintiff-Appellant,

v.

SUSAN TSUI GRUNDMANN, Chairman, Merit Systems Protection Board,
Defendant-Appellee.

_____

On Appeal from the United States District Court
for the District of Columbia
_____

**INITIAL REPLY BRIEF OF APPELLANT PATRICIA A. BROOKS**
_____

Anne King, D.C. Bar No. 996578
Brian Wolfman, D.C. Bar No. 427491
Institute for Public Representation
Georgetown University Law Center
600 New Jersey Avenue, NW, Suite 312
Washington, DC 20001
(202) 662-9546

*Counsel for Appellant*

July 12, 2013

# TABLE OF CONTENTS

TABLE OF CONTENTS...................................................................................i

TABLE OF AUTHORITIES ......................................................................... ii

GLOSSARY.................................................................................................. iv

STATUTES AND REGULATIONS ...........................................................1

SUMMARY OF ARGUMENT ...................................................................1

ARGUMENT ..............................................................................................2

   I.     MSPB asks this Court to make fact determinations in its favor, contrary to the summary-judgment standard and the fact-intensive nature of hostile-work-environment claims...................................................................................2

   II.    MSPB's characterization of Ms. Brooks' claims falls far short of addressing the totality of the circumstances, as required in hostile-work-environment cases...................................................................................7

      A.    MSPB discounts the seriousness of several incidents of harassment. .......8

      B.    MSPB wrongly suggests that this Court's decisions require affirmance.14

   III.   Contrary to MSPB's contentions, a reasonable jury could easily conclude that the harassment Ms. Brooks experienced was based on race, sex, and retaliation. ...........................................................................................16

      A.    Race and sex.....................................................................................17

      B.    Retaliation .........................................................................................18

   IV.   Ms. Brooks has not forfeited her discrete retaliation claim, and that claim should proceed to trial...........................................................................24

CONCLUSION..........................................................................................27

CERTIFICATE OF COMPLIANCE …………………………………………

CERTIFICATE OF SERVICE …………………………………………………

i

# TABLE OF AUTHORITIES

## CASES

*Antonio v. Sygma Network, Inc.*, 458 F.3d 1177 (10th Cir. 2006) .........................12

∗ *Baird v. Gotbaum*, 662 F.3d 1246 (D.C. Cir. 2011) ......................................... 16, 25

*Baloch v. Kempthorne*, 550 F.3d 1191 (D.C. Cir. 2008)..........................................7

*Barbour v. Browner*, 181 F.3d 1342 (D.C. Cir. 1999) ................................. 2, 15, 16

*Beardsley v. Webb*, 30 F.3d 524 (4th Cir. 1994) ....................................................2

*Betts v. Costco Wholesale Corp.*, 558 F.3d 461 (6th Cir. 2009) ..............................2

∗ *Broderick v. Donaldson*, 437 F.3d 1226 (D.C. Cir. 2006) .............................. 19, 21

*Burke v. Gould*, 286 F.3d 513 (D.C. Cir. 2002)....................................................25

*Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742 (1998) ................................... 25, 26

*Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268 (2001) ........................................22

*Cones v. Shalala*, 199 F.3d 512 (D.C. Cir. 2000)....................................................23

*Curry v. Dist. of Columbia*, 195 F.3d 654 (D.C. Cir. 1999)....................................2

*Czekalski v. Peters*, 475 F.3d 360 (D.C. Cir. 2007) ................................................12

*Dist. of Columbia v. Air Fla., Inc.*, 750 F.2d 1077 (D.C. Cir. 1984)......................26

*EEOC v. Boeing Co.*, 577 F.3d 1044 (9th Cir. 2009) ........................................... 6-7

*Flynn v. Comm'r*, 269 F.3d 1064 (D.C. Cir. 2001) ................................................26

*George v. Leavitt*, 407 F.3d 405 (D.C. Cir. 2005)........................................... 14, 15

Authorities upon which we chiefly rely are marked with asterisks.

*Harris v. Forklift Sys., Inc.*, 510 U.S. 17 (1993). ......................................................8

*Hernandez v. Valley View Hosp. Ass'n*, 684 F.3d 950 (10th Cir. 2012) ..................2

*Holcomb v. Powell*, 433 F.3d 889 (D.C. Cir. 2006) ................................................23

*Howard v. Burns Bros.*, 149 F.3d 835 (8th Cir. 1998) ..............................................3

*Hussain v. Nicholson*, 435 F.3d 359 (D.C. Cir. 2006).....................................14, 15

*McCready v. Nicholson*, 465 F.3d 1 (D.C. Cir. 2006)...............................................2

*Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 117 (2002)...................................9

*Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 80 (1998) .....................17-18

*Singletary v. Dist. of Columbia*, 351 F.3d 519 (D.C. Cir. 2003) ...........................16

*Steele v. Schafer*, 535 F.3d 689 (D.C. Cir. 2008) ...................................................16

*Talavera v. Shah*, 638 F.3d 303 (D.C. Cir. 2011)............................................22, 23

*Taylor v. Small*, 350 F.3d 1286 (D.C. Cir. 2003) ...............................................9, 10

*Veitch v. England*, 471 F.3d 124 (D.C. Cir. 2006) .........................................15, 16

*Vera v. McHugh*, 622 F.3d 17 (1st Cir. 2010) .........................................................3

*Vickers v. Powell*, 493 F.3d 186 (D.C. Cir. 2007).........................................16, 17

**RULES**

Fed. R. Civ. P. 8 .......................................................................................................25

## GLOSSARY

**EEO**       Equal Employment Opportunity

**IRM**       Office of Information Resources Management,
              Merit Systems Protection Board

**MSPB**      Merit Systems Protection Board

## STATUTES AND REGULATIONS

All applicable statutes and regulations are contained in Appellant's Opening Brief and Appellee's Brief.

## SUMMARY OF ARGUMENT

A reasonable jury could easily conclude that the Merit Systems Protection Board (MSPB) maintained a hostile work environment based on race, sex, and retaliation and perpetrated discrete acts of retaliation. MSPB's brief attempts to sidestep the summary-judgment standard, effectively calling for the Court to make fact determinations in its favor. MSPB follows the district court's lead, minimizing the seriousness and pervasiveness of the harassment and incorrectly arguing that prior decisions of this Court are determinative.

Similarly, MSPB discounts the evidence establishing that the hostile work environment was based on race and sex and incorrectly suggests that Ms. Brooks must provide direct evidence of racially and sexually offensive conduct. Moreover, MSPB ignores the evidence that Ms. Brooks has provided: disparate treatment of MSPB employees based on their race and sex. MSPB's arguments that Ms. Brooks did not demonstrate retaliatory animus also fail, because MSPB ignores key facts establishing protected activity and mischaracterizes the law on causation.

Finally, Ms. Brooks adequately raised a claim of discrete retaliation below,

and the record is more than sufficient to allow that claim to go to the jury.

## ARGUMENT

I.     **MSPB asks this Court to make fact determinations in its favor, contrary to the summary-judgment standard and the fact-intensive nature of hostile-work-environment claims.**

MSPB's brief effectively asks this Court to make fact determinations in its

favor. This request is inconsistent with the summary-judgment standard, under

which a case must go to trial unless no "reasonable jury could return a verdict for

the nonmoving party." *McCready v. Nicholson*, 465 F.3d 1, 7 (D.C. Cir. 2006)

(internal quotation marks and citation omitted). Hostile-work-environment claims

demand a fact-intensive analysis, and, thus, MSPB's request here is particularly

inappropriate. *See Barbour v. Browner*, 181 F.3d 1342, 1348 (D.C. Cir. 1999); *see

also Curry v. Dist. of Columbia*, 195 F.3d 654, 665 n.3 (D.C. Cir. 1999) (Wald, J.,

concurring) (hostile work environment "is an intensely fact-based question");

*Beardsley v. Webb*, 30 F.3d 524, 530 (4th Cir. 1994) (hostile work environment "is

quintessentially a question of fact") (citation omitted).[1]

---

[1] *See also Hernandez v. Valley View Hosp. Ass'n*, 684 F.3d 950, 958 (10th Cir. 2012) (hostile work environment is "quintessentially a question of fact") (citation omitted); *Betts v. Costco Wholesale Corp.*, 558 F.3d 461, 468 (6th Cir. 2009) (same) (citation omitted).

2

Although "[i]t is the jury's job to weigh [the relevant] factors and decide whether the harassment was of a kind or to a degree that a reasonable person would have felt that it affected the conditions of her employment," *Vera v. McHugh*, 622 F.3d 17, 26 (1st Cir. 2010) (internal quotation marks and citation omitted), MSPB's brief urges this Court to make numerous factual conclusions.[2] Two examples illustrate MSPB's faulty approach.

A.     MSPB spills much ink (at 6-7) explaining Mr. Hwang's supposed justifications for his May 2005 outburst while Ms. Brooks gave a dry run to her co-workers of a presentation about migration of documents to the Document Management System (which is managed by MSPB's Office of Information Resources Management (IRM), where Ms. Brooks works). Mr. Hwang erupted at Ms. Brooks in the middle of her presentation, shouting at her in front of her co-workers, slamming his fist on the table, and then throwing a thick notebook towards her. R. 70-4 at 2; R. 72-3 at 125:4-126:18. MSPB appears to ask this Court to decide that Mr. Hwang's outburst was justified and that, therefore, it was not part of the hostile work environment. However, a reasonable jury could easily find that Ms. Brooks presented evidence showing that Mr. Hwang's reaction was

---

[2] *See also Howard v. Burns Bros.*, 149 F.3d 835, 840 (8th Cir. 1998) ("[W]hether the conduct [rises] to the level of abuse is largely in the hands of the jury") (citation omitted).

3

extreme and that his outburst was beyond the pale, even assuming that his negative assessment of Ms. Brooks was justified.

Moreover, ample evidence undermines MSPB's justifications for Mr. Hwang's reaction. MSPB does not describe the supposed shortcomings of Ms. Brooks' presentation in any detail, instead quoting Mr. Hwang's opinion that it was not "okay" and not "ready." MSPB Br. 7 (citing Mr. Hwang's deposition). But Ms. Brooks was delivering a dry run—a rehearsal—and Mr. Hwang acknowledged that the two days remaining before the actual presentation allowed an opportunity for discussion of alternatives. R. 61-1 at 131:1-12.

MSPB incorrectly states (at 28) that Ms. Brooks "cannot dispute that she was unprepared for the 2005 demonstration." But she *does* dispute this assertion. As Mr. Hwang acknowledged in his deposition, Ms. Brooks identified several reasons for glitches at the time of the dry run, including broader problems with the Document Management System, the IRM system involved in the demonstration. R. 61-1 at 83:17-84:18. Team Leader Bill McDermott (white male), not Ms. Brooks, was responsible for the Document Management System. R. 72-4 91:18-92:3. Mr. McDermott had assured Ms. Brooks that the relevant area of the Document Management System was in good enough condition to use during the demonstration, but he did not inform Ms. Brooks of problems with that area. R. 72-1 at 132.

4

B.     MSPB devotes even more space to disparaging Ms. Brooks' work performance. MSPB asserts (at 28-29) that her 2006 Minimally Successful rating and her 2008 Unacceptable rating were "reasonable . . . based on [MSPB's] assessment of Brooks' performance deficiencies." MSPB's broad critique of Ms. Brooks' work performance is meant to suggest that a jury could not find that unlawful motivations colored her supervisors' treatment.

Ms. Brooks disputes MSPB's characterization of her performance, and a jury could reasonably believe her rather than Mr. Hwang and Mr. Ngo. But, for present purposes, the key point is that a jury would not need to deem Ms. Brooks faultless to conclude that Mr. Hwang and Mr. Ngo were unfairly biased in their assessment of her performance. As highlighted in our opening brief (at 14, 16-23), abundant evidence shows that Mr. Hwang and Mr. Ngo assessed Ms. Brooks' performance differently than they did her white and Asian male co-workers and those who did not engage in protected activity. The most striking examples are 1) downgrading Ms. Brooks' 2006 rating because of a disagreement with Elliot Hoang (Asian male), but giving Mr. Hoang the highest rating possible ("Outstanding"), although Mr. Ngo acknowledged at his deposition that Mr. Hoang was at fault; and 2) rating Ms. Brooks "Unacceptable" for "Teamwork" in 2008 based on an exchange with Mr. McDermott (white male), while rating Mr. McDermott "Exceeds Fully Successful" in "Teamwork," although Mr. Hwang

5

acknowledged at his deposition that Mr. McDermott's behavior was inappropriate. *See* Opening Br. 18-19. MSPB does not dispute these and numerous other disparities between Ms. Brooks' ratings and her co-workers' ratings.[3]

This evidence of differential treatment does two things. First, it undermines MSPB's claim that Mr. Hwang and Mr. Ngo had legitimate reasons to view Ms. Brooks' performance as poor. Second, it shows that the supervisors treated Ms. Brooks differently (and worse) than white and Asian male colleagues and those who did not engage in protected activity.

Moreover, Ms. Brooks offers significant evidence to refute MSPB's claims about her performance. Generally, Ms. Brooks' co-workers praised her technical ability and teamwork skills, *see* Opening Br. 12, 20, and the opinions of co-workers familiar with Ms. Brooks' projects and IRM's operations are relevant in rebutting MSPB's characterization of her performance. *See, e.g.*, *EEOC v. Boeing*

---

[3] Ms. Brooks' performance rating had previously dropped from "Exceeds Fully Successful" in 2004 to "Fully Successful" in 2005, Mr. Hwang's first year at IRM. MSPB claims (at 9) that a "change to the performance standards applicable to the MSPB's grading system" caused the 2005 decrease. But the source MSPB cites, Mr. Ngo's May 2007 affidavit, indicates only that *Mr. Hwang* changed IRM's standards, not that MSPB as a whole revised its performance standards. R. 61-6 at 3. Mr. Ngo, in the same affidavit, stated that "employee performance ratings generally are not as high as they were in the past." *Id.* However, Mr. Ngo's assertion is contradicted by the high ratings the *other* GS-14 Team Leaders received; for example, everyone except Ms. Brooks received "Exceeds Fully Successful" or "Outstanding" in 2006. *See* R. 70-23 at 1; 70-24 at 1; R. 70-25 at 1; R. 70-26 at 1.

*Co.*, 577 F.3d 1044, 1052 (9th Cir. 2009). And MSPB's portrayal of Ms. Brooks'

supposed performance problems is highly flawed. For example, Mr. Hwang and

Mr. Ngo blamed Ms. Brooks for problems with the Outlook Calendar project, but,

as IRM employee Zak Mohamoud explained in detail, Ms. Brooks worked

diligently on the project and, although the Calendar initially functioned, it

ultimately did not succeed because of network and bandwidth limitations that were

out of Ms. Brooks' control. *See* R. 70-10 at 3; Opening Br. 22. MSPB does not

mention, let alone dispute, Mr. Mohamoud's account.

     Furthermore, the evidence on which MSPB relies in characterizing the

Calendar project is highly problematic. MSPB asserts that Ms. Brooks said she

"gave up" on the Calendar project and stated "that is the best that [I] can do."

MSPB Br. 17. But these quotations attributed to Ms. Brooks come from her 2008

performance review—*which Mr. Hwang and Mr. Ngo wrote*—not her deposition

or affidavits. Therefore, the quotations are hearsay—and, more importantly, lack

credibility because they were filtered through the supervisors.

## II.   MSPB's characterization of Ms. Brooks' claims falls far short of addressing the totality of the circumstances, as required in hostile-work-environment cases.

     The "totality of the circumstances" test for hostile-work-environment claims,

*see Baloch v. Kempthorne*, 550 F.3d 1191, 1201 (D.C. Cir. 2008), encompasses a

broad range of factors, including "the frequency of the discriminatory conduct; its

severity; whether it is physically threatening or humiliating. . . ; and whether it unreasonably interferes with an employee's work performance." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993). Notwithstanding any contrary suggestion in MSPB's brief (at 25-26, 29-30), an employee is not required to establish all of these factors (and certainly not multiple incidents of physically threatening conduct) or demonstrate that she suffered a "nervous breakdown." *Harris*, 510 U.S. at 22-23.

As Ms. Brooks argued (Opening Br. 28-31), the district court failed to consider the totality of the circumstances, neglecting to evaluate all relevant facts, mischaracterizing facts, and incorrectly dismissing some incidents as unable to support a hostile work environment. R. 82 at 11. MSPB echoes the district court's approach, discounting the seriousness of several incidents and incorrectly interpreting this Court's precedents.

## A.      MSPB discounts the seriousness of several incidents of harassment.

1.      MSPB does not even acknowledge Mr. Ngo's allegation of time fraud as one of the primary bases for the hostile-work-environment claim, instead characterizing the accusation as an "isolated incident." MSPB Br. 2. MSPB does not dispute that time fraud is punishable by removal (even for first-time offenders) and carries other serious penalties. R. 70-21 at 4. MSPB minimizes the seriousness of Mr. Ngo's accusation by arguing that the "matter was resolved and [Ms.]

8

Brooks was ultimately paid for the time." MSPB Br. 11. But the restoration of time is irrelevant because the harassment stemmed from Mr. Ngo's badgering (including a barrage of emails accusing Ms. Brooks of misreporting her time) and the threat of serious discipline, and because Mr. Ngo's misconduct was part of the overall pattern of harassment directed at Ms. Brooks. *See* R. 70-4 at 3-4; R. 72-1 at 206:2-8. Moreover, Mr. Ngo restored the time—which Ms. Brooks initially sacrificed to resolve the issue—only because MSPB's Chief of Staff (a non-harasser) directed Mr. Ngo to do so. R. 61-6 at 2-3; R 72-1 at 207:9-11.

2. MSPB argues (at 16-17, 29 and 56) that Ms. Brooks' effective demotion after the May 2008 reorganization (that is, her reassignment to lower-level tasks) cannot be part of the hostile work environment because her supervisors reassigned her to grade-appropriate tasks in October 2008. Not so. For over four months, Ms. Brooks was assigned to low-level tasks unsuited for her rank, ability, and experience. A hostile work environment is comprised of a series of acts, *see Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 117 (2002), and the presence of temporary harassment does not remove it from the broader pattern.

MSPB cites *Taylor v. Small*, 350 F.3d 1286, 1293 (D.C. Cir. 2003), for the proposition that it is possible to cure discriminatory conduct. But *Taylor* addresses an adverse employment action, not a hostile work environment, and MSPB offers nothing to show that a pattern of harassment can be cured by belatedly addressing

9

one of its sub-components. In other words, even assuming that it is possible to cure a discrete adverse action by reversing its effects, it does not follow that it is possible to cure a pattern of harassment by reversing the effects of one event that contributes to the pattern.

    3.    In any event, *nothing* was cured. Even when Mr. Hwang assigned Ms. Brooks grade-appropriate duties in October 2008, he did not restore her to a team, and she remains isolated to this day, as the only Team Leader without a team or supervisory responsibilities. *See* Opening Br. 30. Therefore, Ms. Brooks' assignment to new duties did not undo the effects of the May 2008 reorganization. In *Taylor*, by contrast, the employer fully addressed the adverse employment action by correcting an erroneous performance rating and paying a lost bonus. 350 F.3d at 1293.

    Ms. Brooks provided evidence (at Opening Br. 20) showing that her co-workers viewed her as a team player, which undermines MSPB's claim (at 15-16) that her isolation was justified because of "concerns about her ability to work effectively on the [Applications] [T]eam." MSPB asserts (at 18, 28) that Team Leader Teresa Jefferson said she did not want to work with Ms. Brooks, quoting her as stating, "I still do not feel that a concept of [Ms. Brooks] and I as leaders . . . is most beneficial to the office." But, like another quotation wrongly attributed to Ms. Brooks (described above at 7), this quotation comes from Ms. Brooks' 2008

10

performance evaluation written by Mr. Hwang and Mr. Ngo, not from Ms. Jefferson's testimony. Therefore, it is another inadmissible hearsay statement that was filtered through the supervisors. Moreover, this supposed statement by Ms. Jefferson conflicts with her deposition testimony that she has never experienced any communication or teamwork problems with Ms. Brooks. R. 70-2 at 122:2-15; 138:9-18.

MSPB suggests (at 5, 18) that Ms. Brooks' isolation as a result of the May 2008 reorganization does not count because Ms. Brooks was supposedly already "in a box"—a presumed reference to Ms. Brooks' isolation—when Mr. Hwang came to IRM (in 2005) and because Mr. Thomas was at one point also "in a box." Even assuming that this assertion is accurate, IRM's organizational structure in 2005 is irrelevant to IRM's reorganization three years later. As Ms. Brooks' opening brief explained (at 11-12), before the reorganization, Ms. Brooks and Mr. Thomas worked together on the E-Government Team, and Mr. McDermott and Ms. Turner worked together on the Case Processing Systems Team. *See* R. 72-4 at 133:14-135:2. The original reorganization plan assigned Ms. Brooks to a new Applications Team, supervising several employees with Mr. McDermott, Mr. Thomas, and Ms. Turner. R. 70-8 at 3-4; R. 70-18, R. 70-19; 70-35 at 2. Under the May 2008 reorganization, Ms. Brooks—and *only* Ms. Brooks—was isolated, while Mr. McDermott, Mr. Thomas, and Ms. Turner were assigned to the Applications

11

Team. R. 70-8 at 2-4; R. 70-18; R. 70-19. A reasonable jury could find that, regardless of previous IRM organizational plans, Mr. Hwang's May 2008 reorganization targeted Ms. Brooks and was designed to punish her. [4]

  4.  MSPB downplays the November 2007 verbal outburst by Ms. Brooks' co-worker Bill McDermott (white male) because it "involved conduct by a co-worker, not a supervisor, and [because] it is undisputed that Hwang addressed the complaint." MSPB Br. 54. Mr. McDermott erupted at Ms. Brooks during a team meeting, and Mr. Hwang and Mr. Ngo told him to calm down. Opening Br. 10.

  MSPB ignores two important points. Mr. McDermott's outburst was only one particularly serious example of the ongoing harassment of Ms. Brooks that her

---

[4] In emphasizing (at 18) that "Hwang . . . is the same manager who originally moved Brooks from isolation and incorporated her onto a team when he arrived in 2005," MSPB apparently alludes to the "same-actor inference," or an inference that "the employer's stated reason for acting against the employee is not pretextual" when "the employee was hired and fired by the same person within a relatively short time span." *Antonio v. Sygma Network, Inc.*, 458 F.3d 1177, 1183 (10th Cir. 2006) (citation omitted) (collecting cases). *See also* MSPB Br. 34 n.4 (arguing that if Ms. Brooks had alleged a discrete act of discrimination, MSPB would be entitled to cite the same-actor inference). But the same-actor inference does not apply here because the 2008 reorganization differed starkly from the 2005 reorganization in singling out Ms. Brooks. Moreover, the inference does not sensibly apply either to Ms. Brooks' hostile-work-environment claim or her discrete retaliation claim. The reorganization was only one of many incidents comprising the hostile work environment. And Ms. Brooks had not yet engaged in protected activity at the time of Mr. Hwang's arrival, so his actions shed no light on whether he later displayed retaliatory animus. In any event, the same-actor inference does not provide complete or permanent immunity. *Czekalski v. Peters*, 475 F.3d 360, 369 (D.C. Cir. 2007) ("[T]he fact that [a supervisor] once promoted [an employee] cannot immunize him from liability for subsequent discrimination.").

supervisors first modeled and then encouraged when parroted by her white and Asian male co-workers. *See* Opening Br. 13-16, 33-34; *infra* at 13-14, 17. And, by forwarding Ms. Brooks' private email expressing concerns about the outburst *to Mr. McDermott*, Mr. Hwang exacerbated the incident and further humiliated Ms. Brooks. *See* R. 61-7 at 2.

5.    MSPB argues (at 30-33) that Ms. Brooks has provided insufficient evidence that she suffered ongoing harassment at weekly Team Leader meetings and in other interactions with her supervisors and peers. MSPB focuses on the testimony of Ms. Brooks' co-workers, especially Ernie Wang and Zak Mohamoud, arguing that they did not offer specific examples of harassment. But Mr. Wang and Mr. Mohamoud did provide their observations on the general atmosphere of harsh treatment at Team Meetings, less favorable treatment of Ms. Brooks, efforts to exclude Ms. Brooks, and difficult interactions with white and Asian male co-workers, R. 70-9 at 2-3; R. 70-11 at 2-3, corroborating Ms. Brooks' own testimony. *See, e.g.*, R. 70-4 at 6, 14; R. 70-5 at 3-4. Their observations are relevant even if they did not provide specific examples.[5]

---

[5] Similarly, Mr. Wang's statement that "[Ms. Brooks] is being rated badly to get rid of her," R. 70-11 at 3, reflects his observations of the atmosphere at IRM. It is not hearsay as MSPB claims (at 37) because Mr. Wang was not repeating a prior statement. Nor was it speculative because Mr. Wang was referring to Ms. Brooks' 2006 rating, which had already been issued, not her future rating as MSPB suggests (at 33). *See* R. 70-11 at 2-3.

MSPB (at 32) also argues that Mr. Mohamoud's account of a disagreement between Ms. Brooks and Team Leader Elliot Hoang—the same disagreement described above (at 5), for which the supervisors downgraded Ms. Brooks' 2006 performance rating (but not Mr. Hoang's), *see* R.70-4 at 5; R. 70-9 at 3; R. 72-3 at 161—"paints [Ms.] Brooks as a willing participant" in IRM's toxic atmosphere. But the disagreement arose because Mr. Hoang would not allow Ms. Brooks access to IRM's Microsoft support service, *see* R. 70-4 at 5; R.70-9 at 3; R. 72-3 at 161, which actually *supports* Ms. Brooks' allegations of exclusion and unfair treatment.

Finally, MSPB argues (at 34-35) that the harassment "was episodic and lacked continuity." That is not correct. The ongoing harassment and the more serious incidents are united by common themes of bullying and intimidation, exclusion and differential treatment, and unwarranted scrutiny and criticism of Ms. Brooks. Mr. Hwang's outburst at the May 2005 meeting set the tone for subsequent incidents, including the ongoing harassment. *See* Opening Br. 34-35. That Ms. Brooks' experience at IRM was not uniformly negative, *see* MSPB Br. 35-36, is irrelevant.

## B.    MSPB wrongly suggests that this Court's decisions require affirmance.

MSPB argues (at 35-36) that *George v. Leavitt*, 407 F.3d 405 (D.C. Cir. 2005), and *Hussain v. Nicholson*, 435 F.3d 359 (D.C. Cir. 2006), are controlling. But because the test for hostile work environment is fact-intensive and looks at the

totality of the circumstances, past decisions are "of limited value to courts in subsequent cases." *Barbour v. Browner*, 181 F.3d 1342, 1348 (D.C. Cir. 1999). Ms. Brooks acknowledges that *George* and *Hussain* involve allegations similar to hers, but those cases did not involve "conduct that is substantially more severe and pervasive" as MSPB claims. MSPB Br. 35. For example, although the employee in *George* alleged harassment over six months (her total tenure at the employer), 407 F.3d at 407, MSPB's harassment extended for years rather than months, and a jury reasonably could view the time-fraud accusation and poor performance reviews with particular suspicion given Ms. Brooks' long, successful tenure with the government. And this Court should reach a different result here than it did in *Hussain* because, among other reasons, a reasonable jury could find especially persuasive Ms. Brooks' evidence calling her performance ratings into question, *see supra* at 5-7 and because a jury could conclude that the outbursts by Mr. Hwang and Mr. McDermott were particularly serious.[6]

MSPB relies on *Veitch v. England*, 471 F.3d 124 (D.C. Cir. 2006), to argue that "work-related actions by supervisors," "such as non-selection for a desirable position, assignment to undesirable duties, and being criticized by supervisors,

---

[6] Moreover, MSPB mischaracterized *Hussain* as "reject[ing] a claim of hostile work environment based upon twelve alleged acts of retaliation." MSPB Br. 36. In fact, the record showed that Hussain's employer did not actually take four of the twelve allegedly retaliatory actions, including the report of possible malpractice that MSPB mentions. *Hussain*, 435 F.3d at 366; *see* MSPB Br. 36.

15

does not generally establish a hostile work environment." MSPB Br. 30 (citing

*Veitch*, 471 F.3d at 130-31). Along similar lines, MSPB argues that "conduct 'that

reflect[s] poorly upon the professionalism' of other employees and supervisors

generally is neither severe nor pervasive enough to generate an abusive

environment." MSPB Br. 31 (citing *Barbour v. Browner*, 181 F.3d 1342, 1348

(D.C. Cir. 1999)). But there is no rule that "work-related actions by supervisors" or

unprofessional conduct may not comprise part of a hostile work environment. *See*

Opening Br. 30-31 (citing *Baird v. Gotbaum*, 662 F.3d 1246, 1252 (D.C. Cir.

2011); *Vickers v. Powell*, 493 F.3d 186, 198-99 (D.C. Cir. 2007); *Singletary v.*

*Dist. of Columbia*, 351 F.3d 519, 526, 528 (D.C. Cir. 2003)).[7]

**III.    Contrary to MSPB's contentions, a reasonable jury could easily conclude that the harassment Ms. Brooks experienced was based on race, sex, and retaliation.**

As explained in our opening brief (at 38-42), Ms. Brooks provided ample

evidence of a hostile work environment based on race and sex, and, after Ms.

Brooks reported the harassment, based on retaliation as well.

---

[7] Moreover, *Veitch* was a First Amendment case, not a Title VII case, and raised a constructive discharge claim, which involves a more demanding standard ("so intolerable that a reasonable person in the employee's position would have felt compelled to resign") than hostile-work-environment claims. 471 F.3d at 125, 130 (citation omitted). *See also Steele v. Schafer*, 535 F.3d 689, 695 (D.C. Cir. 2008) (district court's rejection of employee's constructive discharge claim did not resolve whether the employee made the "lesser showing" required for hostile-work-environment claim).

## A.    Race and sex

Ms. Brooks presented more than sufficient evidence to show that the hostile work environment was based on race and sex, including laxer performance standards for Ms. Brooks' white and Asian male co-workers, the supervisors' tolerance of those same co-workers' exclusion of Ms. Brooks, the supervisors' practice of soliciting criticism of Ms. Brooks from those co-workers, and outbursts by a supervisor and a white male co-worker directed at Ms. Brooks and other black women. *See* Opening Br. 5-7, 14-16. MSPB argues (at 40-42) that Ms. Brooks did not demonstrate a pattern of adverse treatment based on race or sex, but does not even respond to our comparison of Ms. Brooks' performance reviews to those of her white and Asian male co-workers. *See* Opening Br. 17-18; *supra* at 5-6. Preferential treatment of similarly situated white and Asian male co-workers is probative of discriminatory animus based on race and sex. Moreover, Ms. Brooks is not required to show "direct evidence of racial epithets or sexual propositions or remarks" (as MSPB suggests at 40, 41-42) to establish that the hostile work environment was based on race and sex.[8] *See, e.g., Oncale v. Sundowner Offshore*

_____

[8] MSPB claims (at 41) that *Vickers v. Powell*, 493 F.3d 186 (D.C. Cir. 2007), is "the princip[al] case on which [Ms.] Brooks relies to support her racially or sexually hostile work environment" and emphasizes that *Vickers* involved "a number of overtly sexually hostile acts." That argument makes no sense. Ms. Brooks cited *Vickers* only for an unrelated proposition: that work-related actions and events separated by several years may be part of a hostile work environment. Opening Br. 30-31, 37.

17

*Servs., Inc.*, 523 U.S. 75, 80 (1998) (explaining that the "critical issue" under Title VII "is whether members of one sex are exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed") (citation omitted).

## B.    Retaliation

In arguing that Ms. Brooks cannot establish a retaliatory hostile-work-environment claim, MSPB incorrectly asserts that she did not engage in protected activity linked to retaliatory acts.

### 1.    Protected activity

Starting in May 2005, Ms. Brooks attempted to address her supervisors' hostile treatment by approaching agency higher-ups and then MSPB's Equal Employment Opportunity (EEO) office. MSPB wrongly argues that several of Ms. Brooks' complaints did not constitute protected activity under Title VII.

Ms. Brooks immediately reported Mr. Hwang's May 2005 outburst to his superiors, Mr. McPhie and Ms. Watkins, following the first step of MSPB's EEO plan. Opening Br. 6. Ms. Watkins recommended that Mr. Hwang attend mediation at the Federal Mediation and Conciliation Service with Ms. Brooks in June 2005.[9]

---

[9] Federal Mediation and Conciliation Service "mediators mediate workplace and discrimination complaints for numerous federal agencies." *Workplace Mediation*, Federal Mediation & Conciliation Service, http://www.fmcs.gov/internet/itemDetail.asp?categoryID=49&itemID=16607 (last

18

*Id.* MSPB argues (at 49) that Ms. Brooks does not allege "that she specifically complained of discrimination in May or June 2005." But a case MSPB cites (at 47), *Broderick v. Donaldson*, 437 F.3d 1226 (D.C. Cir. 2006), acknowledges that "no 'magic words' are required" to establish protected activity. *Broderick* indicates that "the complaint must in some way allege unlawful discrimination," but a specific reference to discrimination is not required, and circumstantial facts may establish evidence of that allegation. 437 F.3d. at 1232.

For example, in *Broderick* itself, the employee sent a memo to her supervisors and her employer's EEO office describing her frustration that she had not received a promotion in several years. *Id.* at 1230, 1232. The memo did not specifically allege discrimination or retaliation. *Id.* at 1232. Nevertheless, the court cited the fact that she sent the memo to the EEO office as a factor weighing in favor of finding protected activity (although the court ultimately did not reach that issue and resolved the case on different grounds). *Id.* Similarly, Ms. Brooks' complaint to Mr. Hwang's supervisors followed MSPB's EEO process. And, that Ms. Watkins recommended that Mr. Hwang, a manager at the Senior Executive Service level, *see* R. 61-2 at 1, attend an outside mediation at the Federal Mediation and Conciliation Service suggests that she viewed the incident as quite

visited July 10, 2013). The website explains that "[e]mployment conflicts stemming from disputes concerning equal employment opportunities, age discrimination or harassment can be effectively managed through third-party mediation." *Id.*

serious. Moreover, MSPB cannot (and does not) dispute that Mr. Hwang and Mr. Ngo knew about Ms. Brooks' May 2005 report. Ms. Watkins telephoned Mr. Hwang directly, and he participated in the mediation. And Mr. Ngo acknowledged that he knew Ms. Brooks "complained to [Ms.] Watkins about Mr. Hwang being disrespectful." R. 61-6 at 2.

In October 2005, Ms. Brooks told Mr. Hwang and Mr. Ngo that a proposed rearrangement of Team Leader meetings looked discriminatory because it would have excluded all the female Team Leaders. R. 72-1 at 175:18-176:2. Then, in August 2006, Ms. Brooks met with MSPB's EEO Director, Julio Matta. MSBP suggests (at 53-54) that Mr. Hwang did not know about her August 2006 EEO contact, but Mr. Ngo acknowledged in his deposition that he spoke with Mr. Matta. R. 72-3 at 259:5-9 ("Q: Do you remember any discussions with Julio Matta, the EEO director, around August 30, 2006. A: I remember discussing with Julio Matta, but I don't remember [the] exact date."). And Ms. Brooks recalls that, after their August 2006 meeting, Mr. Matta told her that he discussed her treatment with Mr. Hwang and Mr. Ngo. R. 70-4 at 14.

In October 2006, Ms. Brooks again contacted Mr. Matta regarding the time-fraud accusation, and she met with Mr. Matta, Mr. Hwang, and Mr. Ngo on October 31, shortly before she received her 2006 performance review. R. 70-4 at 3-4, 14; R. 70-27 at 1. Mr. Ngo acknowledged meeting with Ms. Brooks and Mr.

Matta, R. 61-6 at 2; R. 72-3 261:1-14, yet MSPB (at 53) argues that this meeting did not constitute protected activity. [10] But Mr. Ngo himself stated that Ms. Brooks claimed disparate treatment: "[She] accused me of questioning her lunch hours to the EEO Director and said that I didn't question other employees on their lunch hours." R. 61-6 at 2. Again, that Ms. Brooks went to the EEO office, that the EEO Director convened a meeting with both supervisors, and that Ms. Brooks complained of differential treatment adequately establish protected activity. *See Broderick*, 437 F.3d 1226, 1231-32.

 2. Causation

 An employee may show causation—the linkage between protected activity and allegedly retaliatory acts—in several ways. As explained in her opening brief (at 40-42), Ms. Brooks experienced a pattern of retaliatory actions close on the heels of protected activity. MSPB questions Ms. Brooks' evidence establishing temporal proximity and the supervisors' retaliatory animus.

 a. Temporal proximity

---

[10] MSPB maintains that "[e]ven if there was a meeting with Matta on October 31, 2006, Hwang was first 'contacted by an EEO counselor after she was given her performance review in October 2006.'" MSPB Br. at 54 (quoting Hwang EEO affidavit, R. 61-3 at 3). But MSPB slips in the word "first," which is not part of Mr. Hwang's affidavit. Nothing in the affidavit affirmatively indicates that Mr. Hwang did not meet with Mr. Matta on October 31, *before* Ms. Brooks received her 2006 review (on November 3). *See* R. 70-27 at 1.

Temporal proximity between protected activity and alleged retaliatory acts is one way (but not the only way) to show a causal nexus. Ms. Brooks has pointed to temporal proximity in addition to other evidence to establish that nexus. *See* Opening Br. 40-42. In any event, MSPB mischaracterizes the law on temporal proximity.

First, MSPB cites (at 48-49) *Clark County School District v. Breeden*, 532 U.S. 268, 273 (2001), in asserting that "to show causation . . . the temporal proximity of the harassment and protected activity must be substantially close." But *Clark County* refers to situations where temporal proximity is the *only* evidence of causation. MSPB also asserts that "Brooks essentially challenges management decisions already set in place when she engaged in protected activity." MSPB Br. 53 (citing *Clark Cnty.*, 532 U.S. at 272). But MSPB provides no evidence that Ms. Brooks' supervisors "previously contemplated," 532 U.S. at 272, the 2006 and 2008 performance reviews and the 2008 reorganization—which are the sort of actions that a discriminatory or retaliatory supervisor could easily take on the spur of the moment.

MSPB also claims (at 55) that "[t]emporal proximity alone is insufficient to demonstrate a retaliatory motive," citing *Talavera v. Shah*, 638 F.3d 303, 313 (D.C. Cir. 2011), but *Talavera* indicated only that something more than temporality was necessary to establish a supervisor's *knowledge* of protected

22

activity. In fact, *Talavera* acknowledged that an employee may establish temporal proximity by showing that "the employee's EEO complaints were being investigated and the employee was continuing to file formal discrimination and retaliation complaints." 638 F.3d at 314 (citing *Holcomb v. Powell*, 433 F.3d 889, 903 (D.C. Cir. 2006); *Cones v. Shalala*, 199 F.3d 512, 521 (D.C. Cir. 2000)). As Ms. Brooks described in her opening brief (at 40-42), she experienced an ongoing pattern of retaliation that occurred simultaneously with her repeated protected activity and ongoing EEO investigations.

   b.     Supervisors' statements and retaliatory animus

   MSPB is wrong to suggest (at 56) that a reasonable jury would not read the supervisors' affidavits as evidence of retaliatory animus. The affidavits are sworn statements, and they could readily be understood to show that the supervisors took a negative view of Ms. Brooks' protected activity.

   For example, in one affidavit (May 2007) Mr. Ngo stated that "[w]hen things do not go her way she turns to [the] EEO office and turns [it] into a racial issue." R. 61-6 at 4. In another (April 2008) he declared: "This has been an on-going pattern with Ms. Brooks. Any comments or questions … she doesn't like, she tries to turn into an EEO issue," and further dismissed her complaints as "nothing new" and "not credible." R. 70-38 at 5. In still another (October 2008) he stated: "This is the third EEO complaint filed by Patricia Brooks. I don't expect [it]

23

to be the last." R. 70-34 at 5. Mr. Hwang complained (in April 2008) that Ms.

Brooks "go[es] to EEO first whenever she thinks there is a problem," and that

"[w]hen she is appraised because of her performance and does not agree, [she]

claims it's because of discrimination." R. 70-39 at 2, 5. His statement showed

frustration with past EEO complaints: "These are some of the same issues she

brought up in her earlier complaint. We've already gone through this." *Id.* at 4.

And Mr. Hwang also expressed irritation that Ms. Brooks "had already gone to

EEO" about the November 2007 incident "before I even had a chance to do

anything." *Id.* at 2.

Standing alone, the supervisors' statements are compelling evidence of

retaliatory animus. And that Mr. Ngo and Mr. Hwang made some of these

statements just before taking retaliatory actions (*see* Opening Br. 40-43) provides

further evidence of the supervisors' retaliatory state of mind.

## IV.  Ms. Brooks has not forfeited her discrete retaliation claim, and that claim should proceed to trial.

The district court erred in failing to consider whether MSPB committed

discrete acts of retaliation. Opening Br. 43-51. MSPB echoes the district court,

asserting that Ms. Brooks has forfeited her discrete retaliation claim because her

summary-judgment opposition "reaffirmed that the sole theory underlying her

complaint was [] a [] hostile work environment." MSPB Br. 57. As explained in

our opening brief (at 44-47), Ms. Brooks' Second Amended Complaint satisfied

Rule 8 as to her discrete retaliation claim, and her summary-judgment opposition contemplated a discrete retaliation claim. *See Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 749, 765-66 (1998) (noting that "labels . . . are not controlling" and allowing an employee the opportunity to demonstrate *quid pro quo* harassment although she "framed [her claim] as a hostile work environment complaint").

MSPB claims (at 57) that *Baird*, 662 F.3d at 1252-53, imposes a "responsibility to segregate alleged discrete acts of discrimination from the alleged conduct constituting a hostile work environment."  But that case acknowledged that an employee's failure to segregate hostile work environment and discrete retaliation claims was *not* an independent ground for dismissal. *Id.* And MSPB's assertion (at 57) that Ms. Brooks' summary-judgment opposition re-affirmed hostile work environment as her sole claim would not require a finding of waiver even if it were accurate. "In view of the severity of dismissal of a potentially meritorious claim, [] treating an issue as conceded for failure to respond fully to a motion for summary judgment 'should only be applied to egregious conduct.'" *Burke v. Gould*, 286 F.3d 513, 518 (D.C. Cir. 2002) (citation omitted). Here, at worst, Ms. Brooks' summary-judgment opposition reflected the confusion within this Circuit as to whether a hostile-work-environment claim could encompass independently actionable discrete acts, a question recently resolved in *Baird*, 662 F.3d at 1252. *See* Opening Br. 47 n.5.

Although Ms. Brooks does not deny that appellate review is generally limited to the matters before the district court, the cases relied on by MSPB (at 57-58), *District of Columbia v. Air Florida, Inc.*, 750 F.2d 1077, 1078 (D.C. Cir. 1984), and *Flynn v. Commissioner*, 269 F. 3d 1064, 1068-69 (D.C. Cir. 2001), differ significantly from Ms. Brooks' case. In *Air Florida*, the Court declined to consider a novel, complex legal theory that fell outside the allegations of the complaint and the scope of the record below. 750 F.2d at 1078. Similarly, in *Flynn*, this Court did not entertain a constitutional challenge raised for the first time on appeal. 269 F.3d at 1068. In both cases, no one disputed that wholly new theories were first broached in the court of appeals. *Flynn*, 269 F.3d at 1068; *Air Fla.*, 750 F.2d 1078.

Here, by contrast, the claim was made below, the discrete retaliation claim is based on the same statute as the hostile-work-environment claims, and Title VII does not draw stark lines between claims. *See Ellerth*, 524 U.S. at 749. Moreover, here, the record is sufficient to decide Ms. Brooks' claim on the merits without further discovery. Therefore, this Court should assess Ms. Brooks' discrete retaliation claim, finding that it, like Ms. Brooks' other claims, survives summary judgment. Alternatively, it may remand to the district court for summary-judgment consideration in the first instance.

In this regard, we note that MSPB does not argue the merits of the discrete retaliation claim and refers only to its arguments regarding Ms. Brooks' separate and different hostile-work-environment claims. *See* MSPB Br. 58. Our opening brief (at 47-51) discussed the merits of Ms. Brooks' discrete retaliation claim, which we do not repeat here.

## CONCLUSION

For the reasons explained above and in Ms. Brooks' opening brief, this Court should reverse and remand for trial on Ms. Brooks' hostile-work-environment and discrete retaliation claims.

Respectfully submitted,

_____

Anne King, D.C. Bar No. 996578
Brian Wolfman, D.C. Bar No. 427491
Institute for Public Representation
Georgetown University Law Center
600 New Jersey Avenue, N.W., Suite 312
Washington, DC 20001
Tel: (202) 662-9546
Fax: (202) 662-9634

Counsel for Appellant[*]

_____

[*] Counsel gratefully acknowledges the substantial assistance of Travis Collins, a rising second-year law student at Georgetown, who played a key role in preparing this Brief.

27

**CERTIFICATE OF COMPLIANCE**

This brief complies with the type-volume limitation of Fed. R. App. P. 32

(a)(7)(B) because this brief contains _6,509_ words, excluding the parts of the brief

exempted by Fed. R. App. P. 32(a)(7)(B)(iii) and Circuit Rule 32(a)(1). This brief

complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type

style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared

in 14-point Times New Roman, a proportionally spaced typeface.

**CERTIFICATE OF SERVICE**

I certify that the foregoing Reply Brief of Appellant Patricia A. Brooks was

served on July 12, 2013 on appellee Susan Tsui Grundmann, Chairman, Merit

Systems Protection Board via this Court's Electronic Case Filing system (ECF)

and by first class mail to its attorney of record, John G. Interrante, Assistant United

States Attorney, U.S. Attorney's Office for the District of Columbia, Civil

Division, 555 4th Street, NW, Room E-4808, Washington, DC 20530.

/s/ *Anne W. King*_____
Anne King, D.C. Bar No. 996578
Institute for Public Representation
Georgetown University Law Center
600 New Jersey Avenue, N.W., Suite 312
Washington, DC 20001
Tel: (202) 662-9546
Fax: (202) 662-9634
Email: ak682@law.georgetown.edu